IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

FORTUNA GRASSANO,                                )
                                                 )
            Plaintiff,                           )
                                                 )
      v.                                         )     No: 08 C 0458
                                                 )
SERUMIDO, LTD., an Illinois corporation,         )     Mag. Judge Nolan
                                                 )
            Defendant.                           )     Judge Shadur

*FILED*

JAN ...
Jan 23, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## ANSWER TO PLAINTIFF'S COMPLAINT

NOW COMES Serumido, Ltd., by and through its attorney, Robert T. Zielinski of Miller

Canfield Paddock and Stone, P.L.C., for its Answer to Plaintiff's Complaint, states as follows:

### Allegations Common To All Counts ("Common Allegations")

1.     Defendant is an Illinois corporation having its principal place of business,

registered office and agent and doing business in the County of Cook, State of Illinois.

ANSWER:  Defendant admits the allegations of paragraph 1.


2.     At all relevant times, defendant operated a restaurant under the trade name *Spacca

Napoli* ("restaurant").

ANSWER:  Defendant admits the allegations of paragraph 2.


3.     At all relevant times, Jonathan Goldsmith ("Goldsmith") was acting as an

agent/employee of defendant within the course of said agency/employment.

ANSWER:  Defendant neither admits nor denies the allegations of Paragraph 3 as they are too vague to permit a rationale response.  Further answering, Defendant states that Goldsmith did on various occasions act as an agent of Defendant.

4.    On or about 14 February 2006, Goldsmith recruited and hired plaintiff to work as the restaurant's Principal Pizzaiolli (pizza maker).

ANSWER:  Defendant admits the allegations of paragraph 4.

5.    Plaintiff is a native of Formia, Italy, who offered defendant experience and expertise as a Pizzaiolli as well as access to recipes that enabled defendant to produce, serve and sell authentic, specialty pizzas using a custom-built pizza oven.  In addition, plaintiff possessed and provided defendant with other recipes featured prominently in defendant's menu including eggplant, zucchini, cuttlefish, salmon and specialty breads.

ANSWER:  Defendant denies the allegations of paragraph 5 other than to admit that Plaintiff was a native of Italy, that she had prior experience as a pizza maker, that she described her knowledge and expertise in the cuisine in which Defendant's restaurant would specialize when discussing potential employment with Defendant, and that she used her knowledge and expertise while working for Defendant.

6.    During the course of plaintiff's employment by defendant, defendant featured plaintiff, plaintiff's genuine ethnicity, plaintiff's experience, expertise and recipes as a Pizzaiolli in its advertisements, promotions, public relations efforts and marketing.

2

ANSWER:  Defendant denies the allegations of paragraph 6, other than to state that Plaintiff was introduced to visitors, including members of the press, as the Principal Pizzaiolli and that some may have discussed her background and experience when writing or talking about the restaurant.

*Count I – Wrongful Termination/Unlawful Retaliatory Discharge For Exercise of Rights Under Worker's Compensation Act, 820 ILCS 305/1, et seq. ("WCA")*

1-6.    Plaintiff restates and realleges the allegations contained in paragraphs (1) – (6) of the Common Allegations of her Complaint as if the same allegations were set forth here for her allegations of paragraphs (1) – (6) of this Count I of her complaint.

ANSWER:  Defendant incorporates by reference its answers to paragraphs 1-6 inclusive of the common allegations.

7.    On or about 15 December 2006, plaintiff sustained an injury while working in the course of and within the scope of her employment with defendant ("injury").

ANSWER:  Defendant denies the allegations of paragraph 7, other than to admit that Plaintiff claimed to have injured herself at work on or about December 15, 2006.

8.    Thereafter, in December 2006, plaintiff asserted her legal rights and made a claim for benefits under the WCA.

ANSWER:  Defendant denies the allegations of paragraph 8 other than to admit that Plaintiff filed a claim under the Workers Compensation Act.  To the extent that Plaintiff means anything other than the Workers Compensation Act by "WCA."  Defendant denies the allegation in its entirety.

9.      Defendant subsequently terminated plaintiff's employment as a proximate result
of and in retaliation for plaintiff having exercised her legal rights and asserted a claim for
benefits under the WCA.

ANSWER:  Defendant denies the allegations of paragraph 9.


10.     Plaintiff was damaged as a proximate result of defendant's retaliatory and
wrongful termination of her employment.

ANSWER:  Defendant denies the allegations of paragraph 10.


**Count II – Wrongful Termination/Retaliatory Discharge For Exercise**
**of Rights To Overtime Pay Under Illinois Wage Payment and Collection Act,**
**820 ILCS 115/1, et seq. (WPCA) and Fair Labor Standards Act, 29 U.S.C. §201,**
**et seq. ("FLSA")**

1-6.    Plaintiff restates and realleges the allegations contained in paragraphs (1) – (6) of
the Common Allegations of her Complaint as if the same allegations were set forth here for her
allegations of paragraphs (1) – (6) of this Count II of her complaint.

ANSWER:  Defendant incorporates by reference its answers to paragraphs 1-6 inclusive
of the common allegations.


7.      During the period 14 February 2006 – 29 October 2006, plaintiff worked
approximately 787 overtime hours for which she was entitled to and had accrued a right to be
paid wages at overtime rates of pay but for which overtime wages plaintiff made repeated
demands on Goldsmith, to no avail.

ANSWER: Defendant denies the allegations of paragraph 7 other than to admit that Plaintiff did work hours in excess of 40 in certain calendar weeks in the year 2006.

8.      On or before 1 December 2006, plaintiff engaged counsel to make formal written demand for plaintiff's accrued but unpaid overtime pay and other rights under WPCA and the FLSA and on or about 1 December 2006, plaintiff's counsel made such formal, written demand.

ANSWER: Defendant denies the allegations of paragraph 8 other than to admit that in December 2006 it received a letter from an attorney purporting to represent Plaintiff, which letter alleged that Plaintiff was owed money for unpaid overtime compensation.

9.      In response to the formal, written demand alleged in paragraph (8), above, defendant ultimately and eventually paid the overtime wages on or about 5 March 2007.

ANSWER: Defendant denies the allegations of paragraph 9 other than to admit that Plaintiff was paid all wages due to her for work performed.

10.      Defendant terminated plaintiff as a proximate result of and in retaliation for plaintiff having exercised her rights under the FLSA.

ANSWER: Defendant denies the allegations of paragraph 10.

11.      Plaintiff was damaged as a proximate result of defendant's wrongful retaliatory discharge of her employment.

ANSWER: Defendant denies the allegations of paragraph 11.

5

### *Count III – Breach of Oral Contract To Share Profits/Promissory Estoppel*

1-6.    Plaintiff restates and realleges the allegations contained in paragraphs (1) – (6) of the Common Allegations of her Complaint as if the same allegations were set forth here for her allegations of paragraphs (1) – (6) of this Count III of her complaint.

ANSWER:  Defendant incorporates by reference its answers to paragraphs 1-6 inclusive of the common allegations.

7.    Goldsmith first interviewed plaintiff in January of 2006 at the restaurant plaintiff's husband, Francesco Grassano ("Francesco") also attended this meeting ("first interview meeting").

ANSWER:  Defendant admits the allegations of paragraph 7.

8.    At the first interview meeting, plaintiff informed Goldsmith that she had been offered a position by one of defendant's competitors and that the competing offer included a wage rate of $22 per hour, three weeks of paid vacation per year and 25% of the competitor's annual profits; Goldsmith responded that the defendant would match and exceed this competitor's offer.

ANSWER:  Defendant denies the allegations of paragraph 8 other than to admit that Plaintiff claimed to have an offer of employment from another restaurant to work for a wage of $22/hour plus 25% of the profits, that in the course of discussion Goldsmith indicated that he desired to have Plaintiff join his restaurant staff and that he would be willing to match the terms offered by the other potential employer.

6

9.     Approximately two days after the first interview meeting, plaintiff and Francesco met again with Goldsmith at the restaurant and, in consideration for plaintiff's accepting and performing the position of defendant's Pizzaiolli, Goldsmith offered and promised to pay plaintiff $26 per hour, plus overtime, plus three weeks paid vacation plus to pay plaintiff annually 30% of defendant's annual profit and further to increase plaintiff's base hourly wage rate to $30 after "a couple of months".

ANSWER:  Defendant denies the allegations of paragraph 9 other than to admit that at some point in January of February 2006, Plaintiff agreed to begin working for Defendant as a pizza maker with the understanding that she would initially be paid $26 per hour, rising to $30 after an unspecified time period, and that they would work out an agreement regarding profit sharing of up to 30% that made sense for both sides as the employment continued.


10.     Plaintiff accepted the terms and consideration recited in paragraph (9), above, and in consideration for which she accepted the position and duties as defendant's Pizzaiolli, thereby forming an oral contract of employment between plaintiff and defendant ("contract").

ANSWER:  Defendant denies the allegations of paragraph 10.


11.     Plaintiff performed all of her obligations under the contract of the parties until defendant terminated her employment as alleged herein above routinely working 65 -- 70 hours per week for defendant and providing and implementing the use in defendant's restaurant of numerous recipes to which Goldsmith and defendant attributed significant improvement in the restaurant's menu, its reviews and, consequently, its volume of business and profitability.

7

ANSWER: Defendant denies the allegations of paragraph 11 other than to admit that Plaintiff worked for Defendant and sometimes worked as many as 65 hours in a week.

12.    Over the course of the weeks and months that plaintiff continued to perform under the contract, plaintiff repeatedly inquired of Goldsmith about the status of the preparation of the writing by which defendant had indicated he intended that the parties would reduce the contract to writing; each time, Goldsmith responded that he had assigned this task to his and/or defendant's "lawyers" to whom he ascribed responsibility for the delay.

ANSWER: Defendant denies the allegations of paragraph 12 other than to admit that over the course of Plaintiff's employment, Defendant and Plaintiff continued to discuss and attempt to work out an agreement as to the terms and conditions of Plaintiff's employment.

13.    After repeatedly inquiring of Goldsmith as alleged in paragraph (12), above, plaintiff informed Goldsmith that she did not believe that he intended to honor his/defendant's promises to increase her basic wage rate to $30 per hour, to pay her 30% of defendant's annual profit and/or reduce his/defendant's promises to this effect to writing, she intended to resign and depart her position as defendant's Pizzaioli; in response, Goldsmith again assured plaintiff that his/defendant's lawyers would soon have a document drafted that would memorialize the terms of the contract between the parties.

ANSWER: Defendant denies the allegations of paragraph 13, other than to admit that at points in Defendant's discussions with Plaintiff, Defendant offered to have its attorney create a draft employment agreement for Plaintiff's consideration.

8

14.    Defendant breached.  Defendant did not increase plaintiff's basic rate of pay to $30 per hour and has never paid plaintiff any share, much less 30%, of defendant's annual profits for even a single year.

ANSWER:  Defendant denies the allegations of paragraph 14.


15.    Plaintiff reasonably and justifiably relies to her detriment upon the promises of defendant, by Goldsmith, as alleged herein above, *inter alia*, the following respects:

    a)    decided to pass up a competitive offer that included a share of the competitor's profits; and

    b)    worked hours she would not have worked for defendant, and

    c)    shared her valuable recipes with defendant.

ANSWER:  Defendant denies the allegations of paragraph 15.


16.    Accordingly, plaintiff was damages as a proximate result of defendant's breach of the oral contract between the parties, which defendant is estopped from denying based upon plaintiff's detrimental reliance as alleged hereinabove.

ANSWER:  Defendant denies the allegations of paragraph 16.

### Count IV - Accounting

1-16.    Plaintiff restates and realleges the allegations contained in paragraphs (1) – (16) of the Count III and as if the same allegations were set forth here for her allegations of paragraphs (1) – (16) of this Count IV of her complaint.

ANSWER:  Defendant restates and incorporates by reference herein its answers to paragraphs 1-16 inclusive of Count III of the Complaint.

### *Count V – Promissory Fund*

1-16.    Plaintiff restates and realleges the allegations contained in paragraphs (1) – (16) of the Count IV and as if the same allegations were set forth here for her allegations of paragraphs (1) – (16) of this Count V of her complaint.

ANSWER: Defendant restates and incorporates by reference herein its answers to paragraphs 1-16 inclusive of Count IV of the Complaint.


17.    Defendant made the representations and promises alleged in paragraph (9), above, with the intent that plaintiff rely upon them by accepting the offered position of employment, forgoing a competitor's offer of employment and sharing with defendant her valuable recipes and skill.

ANSWER:  Defendant denies the allegations of paragraph 17.


18.    The representations and promises alleged in paragraph (9), above, were material to plaintiff; plaintiff would not have accepted the offered position of employment, forgone a competitive offer of employment and/or shared her valuable recipes and skill with defendant but for these representations and promises.

ANSWER:  Defendant denies the allegations of paragraph 18.


19.    Defendant, by Goldsmith, knew when Goldsmith made the representations and promises alleged in paragraph (9), above, that those representations were false when made and that he/defendant had no intention of ever honoring those promises to plaintiff.

ANSWER:  Defendant denies the allegations of paragraph 19.


10

20.     Defendant's knowingly false representations and promises to plaintiff constitute a fraud upon plaintiff.

ANSWER:  Defendant denies the allegations of paragraph 20.


21.     Plaintiff sustained damage as a proximate result of defendant's fraud upon her.

ANSWER:  Defendant denies the allegations of paragraph 21.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's claims for contractual relief are barred in whole or in part by the statute of Frauds.

2.     Plaintiff's claims for equitable relief are barred in whole or in part by her unreasonable delay in raising them.

3.     Plaintiff's claims for equitable relief are barred in whole or in part by the doctrine of unclean hands.

4.     Plaintiff's claims for damages are barred in whole or in part by her failure to take reasonable steps to mitigate her damages.

5.     Plaintiff's claims for relief in contract or quasi contract are barred by her failure to substantially and in good faith perform her obligations under the alleged contracts.

6.     Plaintiff's claims for relief in contract or quasi-contract are barred by her substantial and material breach of her obligations under the alleged agreements.

7.     Plaintiff's claims are barred by her breach of fiduciary duties owed to Defendant.

## COUNTERCLAIMS

As and for its counterclaims against Plaintiff, Defendant hereby states as follows:

11

## COUNT I – FRAUD

1. Plaintiff, Fortuna Grassano, was employed on an at will basis by Defendants beginning in February 2006.

2. On or about December 15, 2006 Grassano left work, claiming to have sustained an injury at work.

3. Plaintiff did not in fact injure herself at work.

4. From December 2006 until the present, Plaintiff has never communicated to Defendant that she was physically able and ready to return to work.

5. On information and belief, Plaintiff was released to return to work by her physician on in approximately November 2007.

6. Plaintiff did not inform Defendant of her release to return to work, and did not present herself for a return to active employment by Defendant when she was released to return to work by her physician.

7. Upon information and belief, during all or most of the time that Plaintiff remained off from work receiving workers compensation benefits, Plaintiff was in fact fully capable of working either for Defendant or another employer.

8. Plaintiff knowingly and falsely represented that she had been injured and that she continued to be unable to work in the period from December 2006 to November 2007.

9. As a result of Plaintiff's false representations, Defendant, through its carrier, was required to pay workers compensation benefits to Plaintiff.

10. During the course of time that Plaintiff was falsely claiming to be unable to work and collecting workers compensation benefits from Defendant and its carrier, Plaintiff was actually working actively to set up a competing business. Upon information and belief, Plaintiff

12

engaged in the fraud because she did not wish to return to work for Defendant but wished to have Defendant subsidize her efforts to start the new restaurant.

## COUNT II – BREACH OF FIDUCIARY DUTIES

7.      Plaintiff was employed at will by Defendant beginning in February 2006.

8.      Plaintiff continued in active employment with Defendant until December 15, 2006 when she left work claiming to have injured herself at work.

10.     Plaintiff never returned to active employment with Defendant following December 15, 2006.

11.     Upon information and belief, Plaintiff was released to return to work with no restrictions sometime in November 2007.

12.     Plaintiff did not seek to return to Defendant's employment, nor did she advise Defendant of her release to return to work.

13.     During the time that Plaintiff was off from work, ostensibly for the reason that she was physically incapable of working, Plaintiff was in fact capable of working and was actively endeavoring to set up and create a competing enterprise to Defendant.

14.     Plaintiff never intended to return to work at the end of her workers compensation leave, and wrongly hid that fact from Defendant.

15.     As an employee of Defendant, Plaintiff owed Defendant a duty of loyalty and faithful service.

16.     Plaintiff breached her common law duty of loyalty and faithful service in various and diverse ways during the course of her active employment, by acts such as:

        a. failing to report and taking active steps to conceal thefts committed by a co-employee to whom Plaintiff was related;

13

b. disparaging Spaccanapoli and its products and services both directly and through her agent, Francesco Grassano;

c. attempting to interfere in the relationships between Defendant and its employees by among other things threatening to put Spaccanapoli out of business and making false representations regarding Spaccanapoli and its owner Jonathan Goldsmith.

17.     In addition, to the breaches recited in paragraphs 16, Plaintiff further breached her duties of loyalty to Defendant by the conduct described in Count I of this counterclaim.

18.     Plaintiff's disloyal actions were the proximate cause of harm to Defendant in the form of harm to its reputation and increases in its costs of doing business.

19.     In addition to the harms caused to Defendant, Plaintiff's disloyalty requires a forfeiture of all compensation earned from Defendant during the period of Plaintiff's disloyalty.

WHEREFORE, Defendant respectfully requests that this court enter judgment in its favor on all claims made by Plaintiff against it and on its counterclaims against Plaintiff together with such damages and equitable relief as the court deems just and appropriate in the circumstances.

DATED:  January 22, 2008                          Respectfully submitted,

                                                  SERUMIDO, LTD.


                                        By: s/ Robert T. Zielinski
                                            One of the Attorneys for Defendants


Robert T. Zielinski
Miller Canfield Paddock and Stone, P.L.C.
225 West Washington Street, Suite 2600
Chicago, Illinois 60606
Phone (312) 460-4200
Fax: (312) 460-4201
*Attorneys for Defendant*

14

## CERTIFICATE OF SERVICE

I, Robert T. Zielinski, certify that on January 22, 2008, I caused the attached **ANSWER TO PLAINTIFF'S COMPLAINT** to be sent via regular mail, postage prepaid to the attorney of record at the following address:

                                   Law Offices of Hall Adams, LLC
                                   77 W. Wacker Drive, Suite 4800
                                   Chicago, IL  60601

                                   Law Offices of Peter S. Stamatis, PC
                                   77 W. Wacker Drive, Suite 4800
                                   Chicago, IL  60601

                                   s/ Robert T. Zielinski
                                   One of the Attorneys for Defendants

CHLIB:6666.1\135437-00001