IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

FORTUNA GRASSANO,                )
                                 )
                 Plaintiff,      )
                                 )
     v.                          )    No.  08 C 458
                                 )
SERUMIDO, LTD.,                  )
                                 )
                 Defendant.      )

                       MEMORANDUM ORDER

     On February 12, 2009 this Court announced its oral ruling rejecting the motion of Serumido, Ltd. ("Serumido") for summary judgment on a wrongful retaliatory discharge claim brought against it by its ex-employee Fortuna Grassano ("Grassano").  Now Serumido has renewed that motion and Grassano has responded, so that this Court must revisit the issue.  It has done so, and the French have an apt aphorism to describe its conclusion:

          Plus ça change, plus c'est la même chose.

     Since the parties first went around the summary judgment block, Grassano has waived her previously-asserted attorney-client privilege, and the deposition of her former lawyer Gwen Carroll ("Carroll") has been taken.  What remains as the critical genuine issue of material fact stems from the July 31 and August 3, 2007 exchange of emails between Carroll and Serumido's attorney Robert Zielinski ("Zielinski"), attached as Ex. 1 to this memorandum opinion and order.  There is no question that, as Carroll testified in (the following portion of her deposition

(Dep. 45:19 to 47:10), a reasonable reading (indeed, to this Court as an objective reader the most reasonable reading) of Zielinski's August 3 email was that Grassano had been fired rather than quitting:

> Q: Other than what you've told me about the conversation between yourself and Ms. Grassano and Franco in November when she's released to return to work, anything else you recall taking place in that conversation being said?
>
> A: Yes, I pull up their file in front of me on my computer, and I look at the exchange of emails between Mr. Zielinski and myself which are a set of--two emails that Nella and Franco and I have already discussed, and the reason I bring it up is because Nella is saying--and yes, you know, there's--she had seen the email already, and, again, she's confirming that, you know, she has no job. It's been true every which way from Sunday.
>
> I am in fact saying:
>
> The cleanest record would be if you call. After Worker's Comp you call your employer and you say you're ready to go back to work. I said, but--and I remember saying this--you know, the law does not require a futile act, and, you know, you've--it's been communicated to you that you've already been fired, and we bring up--she brings up or I bring up, I don't remember who, or Franco does, we bring up the email in midsummer, and that email in their minds and in my mind solidified that the situation was indeed completely and totally finished.
>
> There was absolutely no doubt that there was no job waiting for Nella. There was going to be not only no employment agreement, no work period, and Jonathan had communicated through his attorney, and, also, as I understood it to several employees that Nella was not welcome back at the restaurant, and Nella and Frank both have been calling me as early as February that they were hearing from other attorneys--I mean I'm sorry--other employees that Jonathan was advising the employees that Nella no longer worked

2

there and did not have a job there.

Serumido urges that Fed. R. Evid. ("Evid. Rule") 408 somehow precludes consideration of Zielinski's email. That however is a total misreading of Rule 408, for what Zielinski said there was the antithesis of a compromise negotiation. It was an admission--classic nonhearsay under Evid. Rule 801(d)(2)(D).

In apparent recognition of that weakness, Serumido retreats one metaphorical street (as the Russians did in defense of what was then Stalingrad in World War II) to assert "that the statement was quickly followed by a direct instruction from Defendant that Plaintiff should report for work once she was medically released." For that purpose Serumido seeks to rely on Zielinski's statement in his Aff. ¶10 and on Carroll's failure to recall that earlier asserted statement by Zielinski. But that attempted reliance does not eliminate the already-described material factual issue, for Carroll has made it clear that any such purported statement would have possessed no bona fides under the circumstances (Carroll Dep. 59:5 to 59:19):

> I, I was absolutely convinced there was no job for Nella, and it had been communicated to me in several forms of communication that my client had reported to me that she had herself heard it from other--and her husband had heard it from other employees, so if Mr. Zielinski did say that to me, and if he reports that I did, I have no reason to believe that he would be reporting something he did not say.
>
> I probably would not have taken it--I would not have taken that as a truthful communication of his client's position. Not untruthful with respect to Mr.

3

>     Zielinski, but not meaningful in the sense at all that
>     my client had a job with Mr., with Mr. Goldsmith.

In sum, with all of the evidence--including all reasonable inferences--considered in the light most favorable to Grassano, as Fed. R. Civ. P. ("Rule") 56 requires, Serumido has once again failed to cut Grassano's lawsuit off as a matter of law. Serumido's Rule 56 motion is denied, and at the previously-scheduled August 27 status hearing the parties will be expected to discuss teeing up this lawsuit for trial as swiftly as possible.

                                _____
                                Milton I. Shadur
                                Senior United States District Judge

Date:  August 25, 2009

**From:** Zielinski, Robert T. <rzielinski@mcguirewoods.com>
**To:** gvclaw@aol.com
**Subject:** RE: Nella Grassano and Spacca Napoli
**Date:** Fri, 3 Aug 2007 3:35 pm

Dear Gwen,

Thanks for you letter. I too prefer to avoid rehash of our prior discussions.

As I told you when last we talked (back in June or maybe even May), my client has no desire to enter into an arrangement such as you are proposing.

I am somewhat surprised at, and frankly dubious of, your suggestion that Ms. Grassano remains interested in working at Spacca Nappoli. It is my understanding that she has not reported for work, notified Mr. Goldsmith of her condition, communicated any on-going interest in employment, or indeed communicated with him in any way since December 2006. As you know from our previous discussions, Mr. Goldsmith was in the process of ending the relationship between Spacca Nappoli and Grassano even before she had her "accident". Indeed, you and I had shifted our conversation from the terms of an on-going employment contract to negotiation of severance terms no later than early December 2006. You and I had extensive discussions regarding our clients' respective dissatisfactions with the employment relationship and agreed that it was in their mutual best interest to disengage. You made clear that Ms. Grassano neither trusted nor respected Mr. Goldsmith. For his part, Mr. Goldsmith had already reached the decision to terminate Ms. Grassano effective when the restaurant took its holiday break. There is no reason to believe that the employment relationship would be any more satisfactory to Mr. Goldsmith or to Ms. Grassano now than it was in December 2006.

Sincerely,

RTZ

-----Original Message-----
**From:** gvclaw@aol.com [mailto:gvclaw@aol.com]
**Sent:** Tuesday, July 31, 2007 3:12 PM
**To:** Zielinski, Robert T.
**Subject:** Nella Grassano and Spacca Napoli

Dear Bob:

My Client, Nella Grassano, may be released to go back to work as early as this Friday. She is prepared to return to work unless she is fired or she has entered into a separation, waiver, and release agreement with her employer.

Without rehashing all our previous discussions on this issue, I am writing to offer my Client's revised proposal for amicable separation: Nella has authorized me to communicate her willingness to accept $67,500 in exchange for her departure from Spacca Napoli's employ. as well as her waiver and release of all claims against Spacca Napoli and Jonathan, which claims we have discussed at length in the past. (Her proffered waiver and release does not include, however, her claim for fees on her partially-resolved overtime claim, as those fees are not susceptible of dispute and are due and owing. As Spacca Napoli rejected my offer to accept a reduced fee in exchange for timely payment, we will submit our petition for fees, give Spacca Napoli an opportunity to pay before filing suit, and file suit only if we are unable to obtain payment.)

Please give me a call after you have had an opportunity to speak with your client. In the meantime, if I learn anything further on Nella's return-to-work release, I will let you know.

http://webmail.aol.com/31361/aol/en-us/Mail/PrintMessage.aspx



EXHIBIT C

10/22/2007